# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

**MALCOM BRUMLEY,**
**ADC #153126**                                                                                **PLAINTIFF**

**V.**                          **CASE NO. 5:13CV00087 DPM/BD**

**GAYLON LAY, et al.**                                                                    **DEFENDANTS**

## RECOMMENDED DISPOSITION

### I.    Procedures for Filing Objections:

This Recommended Disposition ("Recommendation") has been sent to United States District Judge D.P. Marshall Jr. Any party file written objections to this Recommendation.

Objections must be specific and must include the factual or legal basis for the objection. An objection to a factual finding must identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of your objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation. A copy will be furnished to the opposing party.

If no objections are filed, Judge Marshall can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

Mail your objections to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## II. Background:

Plaintiff Malcom Brumley, an Arkansas Department of Correction ("ADC") inmate, filed this lawsuit *pro se* under 42 U.S.C. § 1983, alleging that Defendants Gaylon Lay, Troy Moore, Marie Austin, and Lavanda White-Matthews acted with deliberate indifference to his medical needs. (Docket entry #2) His primary complaint appears to be that the Defendants delayed taking him to a follow-up eye examination.

Defendants have now moved for summary judgment. (#29, #31) Mr. Brumley has not responded to the Defendants' motions, and the time for doing so has passed. (#35) Based on the evidence presented, the Court recommends that both motions for summary judgment (#29, #31) be GRANTED.

## III. Discussion:

### A. Standard

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine dispute as to any material fact. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246, 106 S.Ct. 2505 (1986). A moving party must first present evidence showing that there is no genuine dispute as to material

facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). If the moving party meets this burden, the nonmoving party must come forward with evidence showing that there is a genuine dispute that must be decided at a trial. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If a nonmoving party such as Mr. Brumley does not submit enough proof to establish a necessary element of a claim, the moving party is entitled to judgment on that claim. *Celotex Corp.*, 447 U.S. at 322-23, 106 S.Ct. at 2552.

  B. Exhaustion

Prisoners must exhaust all "available" remedies before filing suit under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 738, 121 S.Ct. 1819 (2001)(holding that available remedies "must be exhausted before a complaint under § 1983 may be entertained"). For purposes of § 1983, an "available remedy" is one that is "capable of use for the accomplishment of a purpose; immediately utilizable [and] accessible." *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001). If a claim is not fully exhausted by the time a lawsuit is filed, the Court must dismiss that claim. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003).

Whether a prisoner has properly exhausted administrative remedies turns on the specifics of prison policy. *Jones v. Bock*, 549 U.S. 199, 923 (2007). Prisoners can be excused from exhausting administrative remedies, but only when correction officials have prevented them from using grievance procedures or when the officials themselves have

not complied with the administrative procedures. *Miller v. Norris*, *supra* at 740; *Foulk v. Charrier*, 262 F.3d 687, 697–98 (8th Cir. 2001).

The Defendants contend that Mr. Brumley did not exhaust his claims against Defendants Lay, White-Matthews, and Austin. In support of their motions, they offer Mr. Brumley's deposition testimony. In his deposition, Mr. Brumley testified that he fully-exhausted only one grievance related to the claims raised in this lawsuit, CU-12-3179. (#29-1 at p.41; #34-4 at p.12) Mr. Brumley specifically mentioned Defendant Moore in that grievance, but he admits that he did not mention Defendants Lay, White-Matthews, or Austin in his fully exhausted grievance. He concedes that he did not mention the failure of Defendants White-Matthews or Austin to coordinate his transportation to a follow-up examination in that grievance and admits that he never spoke with Defendant Lay about his need for medical treatment. (#29-1 at pp.9-10, 45-46, 57-59;#34-4 at pp.14-15)

In addition, Defendant Lay has presented the declaration of Shelly Byers, ADC Medical Grievance Supervisor, in support of his motion. (#29-3) Ms. Byers also testifies that Mr. Brumley fully exhausted only one grievance regarding the events giving rise to this lawsuit, CU-12-3179. (#29-3 at p.2)

Based on the undisputed evidence, Mr. Brumley failed to exhaust his claims against Defendants Lay, White-Matthews, and Austin. He has not come forward with any proof to rebut the evidence showing that he did not fully exhaust these claims. As a

result, his claim against Defendants Lay, White-Matthews, and Austin should be dismissed, without prejudice, for failure to exhaust.

  C. Defendant Moore

According to Mr. Brumley, during his first encounter with Defendant Moore in November 2012, Defendant Moore explained that he did not have the proper tools to diagnose Mr. Brumley's eye problems. (#29-1 at p.20; #34-4 at p.2) He did, however, provide Mr. Brumley with eye drops to be administered hourly. (#29-1 at p.20; #34-4 at p.2; #34-5 at p.2) He also instructed Mr. Brumley to return to the infirmary the next day if his problems persisted. (#29-1 at pp.20-21; #34-4 at pp.2-3; #34-5 at p.2)

When Mr. Brumley returned the next day, Defendant Moore informed ADC staff that Mr. Brumley needed to be taken to the emergency room. (#29-1 at p.21; #34-4 at p.3; #34-5 at p.2) Mr. Brumley was then transported to UAMS where his intraocular pressure was taken. (#34-5 at p.2) Based on the high level of pressure, Dr. Ngo (not a party to this lawsuit) prescribed prednisone eye drops, a steroid, Cyclogel, as well as Naproxen for a swollen hand. (#29-1 at pp.26-27; #34-4 at pp.4-5) Dr. Ngo recommended that Mr. Brumley return in seven days for a follow-up examination. (#29-1 at p.26; #34-4 at p.4; #34-5 at p.2) Mr. Brumley, however, was not taken to see Dr. Ngo again for nearly three months. (#29-1 at p.33; #34-4 at p.10)

According to Mr. Brumley, he next saw Defendant Moore after he completed his Naproxen prescription. (#29-1 at p.28; #34-4 at p.6) Mr. Brumley informed Defendant Moore that his hand was continuing to swell. (#29-1 at pp.28-29; #34-4 at pp.6-7)

Accordingly, Defendant Moore provided Mr. Brumley a different anti-inflamatory medication. (#29-1 at p.29; #34-4 at p.7)  Mr. Brumley alleged that he asked Defendant Moore about his follow-up examination at that time.  Although he does not explain how Defendant Moore responded, Mr. Brumley alleged that he received a document stating that there was no medical need for a follow-up examination. (#29-1 at p.29; #34-4 at p.7)

Sometime after that visit, Mr. Brumley again saw Defendant Moore. (#29-1 at p.30; #34-4 at p.8)  Mr. Brumley explains that Defendant Moore was under the impression that he was suffering from glaucoma. (#29-1 at p.30; #34-4 at p.8)  Defendant Moore provided Mr. Brumely the anti-inflammatory meloxicam and prednisone eye drops. (#29-1 at p.31; #34-4 at p.9)  When Mr. Brumley asked about a follow-up visit, Defendant Moore allegedly told Mr. Brumley that he did not need such an appointment. (#29-1 at p.30; #34-4 at p.9)  Mr. Brumley, however, also testified that Defendant Moore told him that "they would arrange [an appointment] just as soon as I was available, or an appointment would be made, that I would be able to go." (#29-1 at p.47;#34-4 at p.16)

About three months later, Mr. Brumley was taken to the Jones Eye Institute at UAMS for an eye examination. (#29-1 at p.33; #34-4 at p.10)  Although the problems with his right eye had significantly improved, he was beginning to experience similar symptoms in his left eye. (#29-1 at pp.33-34; #34-4 at pp. 10-11)  He was provided an oral steroid to treat the symptoms. (#29-1 at p.34)  Mr. Brumley testified that his symptoms improved within days of taking the prescribed medication. (#29-1 at p.35)

Three months later, Mr. Brumley was again taken to the Jones Eye Institute. He was again provided an oral steroid. (#29-1 at p.36)

The Medical Defendants offer Defendant Moore's declaration, as well as Mr. Brumley's medical records, in support of their motion. (#34-5) Mr. Moore's version of events is substantially the same as Mr. Brumley's account.

Accordingly to Defendant Moore, on November 20, 2012, he examined Mr. Brumley based upon the problems that Mr. Brumley was having with his right eye. (#34-5 at pp.2, 11-13) Defendant Moore gave Mr. Brumley eye drops and told him to return to the infirmary if the symptoms did not improve. (#34-5 at pp.2,11-13) The next day, Mr. Brumley returned to the infirmary; Defendant Moore informed ADC staff that Mr. Brumley should be transported immediately to the Jones Eye Institute at UAMS. (#34-5 at pp.2, 14-15)

During his examination, UAMS physicians noted that Mr. Brumley had little vision in his right eye and that his intraocular pressure was elevated. (#34-5 at pp.2, 29-32) The examining physician recommended medication, lab work, and a return examination the following week. (#34-5 at p.31) According to the undisputed evidence, Mr. Brumley returned to the ADC with only a glaucoma handout. (#34-5 at p.2)

On December 14, 2012, Defendant Moore again examined Mr. Brumley. (#34-5 at pp.3, 20) Based on the significant improvement in Mr. Brumley's right eye, Defendant Moore determined that it was not necessary for Mr. Brumley to return to the Jones Eye Institute at that time. (#34-5 at p.3) Defendant Moore, however, asked Mrs. Crumpton

(not a party to this lawsuit) to obtain the clinic notes from Mr. Brumley's November 2012 examination at the Jones Eye Institute. (#34-5 at pp.3-4, 20) Defendant Moore did not see Mr. Brumley again until February 2013. (#34-5 at pp.4, 22-23)

During the February 11, 2013 visit, Mr. Brumley brought his medical records from the Jones Eye Institute at UAMS. (#34-5 at p.4) Defendant Moore had not seen those records previously. (#34-5 at p.4) At that time, Defendant Moore discovered that Mr. Brumley had been diagnosed as possibly suffering from Anterior Scleritis and Uveitic Glaucoma of the right eye. (#34-5 at p.22-23) He also discovered that Mr. Brumley was supposed to have a follow-up examination a week after his initial examination. (#34-5 at pp.4, 22-23) Defendant Moore prepared a consult request at that time. (#34-5 at pp.4, 22, 25, 27)

On February 28, 2013, Mr. Brumley was taken to the Jones Eye Institute. (#34-5 at p.4, 37) Mr. Brumley's medical records show that he was experiencing some problems with his left eye, but that his right eye had substantially improved. (#34-5 at pp.37-40)

Based on the evidence presented, the Court cannot conclude that Defendant Moore acted with deliberate indifference to Mr. Brumley's serious medical needs. To show a failure to provide adequate medical treatment, Mr. Brumley would have to prove that he suffered from an objectively serious medical need and that Defendant Moore "knew of the need yet deliberately disregarded it." *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004). Here, he cannot make that showing. It is true that Defendant Moore did not schedule Mr. Brumley's follow-up examination at the Jones Eye Institute as

recommended, but Mr. Brumley has failed to present any evidence showing that this failure was anything other than an oversight, or that his condition worsened as a result of the mistake. Rather, the evidence presented shows that Defendant Moore examined Mr. Brumley several times between December 2012 and February 2013, and that Mr. Brumley's eye problems substantially improved during that time. Moreover, it is undisputed that Defendant Moore did not have Mr. Brumley's medical records indicating that a follow-up examination was necessary until February of 2013. When Defendant Moore discovered that Mr. Brumley should have had a follow-up examination, he promptly requested a consult. Such evidence falls short of supporting a deliberate-indifference claim. Accordingly, Defendant Moore is entitled to judgement as a matter of law on Mr. Brumley's claims against him.

### IV. **Conclusion:**

The Court recommends that the motions for summary judgment (#29, #31) be GRANTED. Mr. Brumley's claims against Defendants Lay, White-Matthews, and Austin should be DISMISSED, without prejudice, based on his failure to exhaust his administrative remedies. His deliberate indifference claims against Defendant Moore should be DISMISSED, with prejudice.

DATED this 19th day of February, 2014.

_____
UNITED STATES MAGISTRATE JUDGE